I'm Gregory Haynes and I'm the attorney for the appellants in this matter Charles Gillis, Joseph Hall and Anthony Lawrence. In this case there is I think no question that there was not probable cause at the time that the individuals were detained at the street because there was no reliable identification and at that time the officers had determined that they were going to further investigate the case at best. Well wasn't there an ID of an eyewitness ID right at the scene? Well and which was further enhanced when they got the defendant down to the police station? There was a form of a ID which was unreliable and wouldn't constitute trustworthy information to cause a reasonable person to believe that these individuals were involved. Are you talking about the cold show ID? That the cold show that is correct. Didn't the police follow the appropriate protocol for a cold show ID? Why was it unreliable? Well it was a number of reasons. First it was suggestive because the setting implied guilt. The individuals were there, they were in handcuffs, they were in the police vehicle, they were surrounded by 10 to 15 police officers so the setting is very very suggestive. Then there's the identification itself. Now first with regard to- Is it also counsel your position that the defendants, I'm sorry that the plaintiffs here in the trial court, were they asked to manipulate their head gear? Is that part of what you're saying factually? That is correct. In fact one of the witnesses, one of the victim witnesses, Alex, he states he couldn't identify a person unless he had a hoodie on. So he was identifying a person with a hoodie. His initial comment to the dispatch was that there was one person with a hoodie and that they were wearing all black. Once he saw two people he then said, well there were at least now, after he saw the two people, he said there's at least two with a hoodie and after he saw that these particular individuals didn't have all black on, he then said he's not sure of what they were wearing. Instead it was dark. He starts to indicate once he's interviewed that the jeans could have been dark blue. And if you look at the photograph it's clear that the jeans cannot be confused with being dark. For example... But with that clarification, what's your authority for, with victim identifications, what's the authority for the requirement that those identifications be verified in other ways, for example with a photo array to under a grant you have to have a reliability index to determine whether they're reliable. Here they're suggestive and as a result of being suggestive that identification is inappropriate or it's not sufficient to establish probable cause. But here you have the victims, two victims, and confirming and clarifying identifications at the police station. Well the clarification is in fact a declaration of non-identification. We have two things here. First, Christy does not identify anybody. She notes that the victims or that the perpetrators had a hoodie on and that the people that she saw had a hoodie on. In fact, when she looks at the hoodie, she looks at one and says, my God, that's nylon, as opposed to being cloth as the perpetrators had. The inspector, because his job was not to release the individuals should he find evidence that negate probable cause, he disregards that. He says, well perhaps it was just too dark. So her identification is a non-identification because it's of similar clothing and that identification is insufficient because it's not even similar. She's herself indicates it is not cloth, whereas the person that she saw was cloth. I thought the victim, Kristen, identified Hall as a robber and Gillis as a robber who took her purse. Well, she didn't identify Gillis. She didn't see Gillis' face and she didn't see Hall's face. She said she couldn't identify any of them, those two. She did say she saw the gunman, but she couldn't identify who that was, but she could not identify Gillis or Hall. Now, Alex, he states he cannot identify Gillis. All he states with regard to Gillis is that Gillis had a hoodie on. And again, we have to remember that these people have very distinctive clothes. And Alex, he doesn't recognize any of the clothes. He doesn't recognize the reflective gear on the blue jeans of Gillis or his shoes or the dress of Hall. But Alex, he does state, after prompting, that Gillis Hall might be the one with the gun. Well, he said he was 98% certain that Hall was holding the gun. That's right. But he says that he's uncertain. And then because of prodding, he says 98. But he said that based on referring to Hall's facial features. He said that based on the inquiry from Mr. Inspector Wong, who wanted a positive ID. He encouraged him. But even if we accept what he said, we have to understand that this person does not have the indicia of reliability. He states when he was purposely not looking at the person's eyes, he was cowering down. He saw a big silver gun. Oh, wait a minute. He doesn't know what type of gun it was, but because he said it was silver, he told the dispatcher it was silver. He told everyone he could it was silver. But when he talked to Inspector Wong, through the power of suggestion, and wanting to find that this person is the person that committed the crime, he said, well, you know what? The gun was actually dark. That's the power of suggestion. That's why not only is there a lack of indicia, but there's also a very suggestive. Therefore, for the ID, we have to recognize that that suspect, but then... But Counsel, talking about Inspector Wong and the alleged due process violations, that your position there is based on failure to interview Lawrence. It is based on a number of items, but one... So what signaled to Wong, to the extent it's based on failure to interview Lawrence, what would have signaled to Wong that Lawrence had exculpatory information? Because what Wong states is that if Lawrence can have credible information, that Lawrence was not at the scene, that Lawrence was not involved with it. How would it... I'm trying to understand this as well. How should Inspector Wong have known that Lawrence had this exculpatory information? Because he knew that Lawrence was with Hall, and that Gillis and Hall both state that Lawrence was with them all night. So if Lawrence was not there, then Hall and Gillis would be exonerated. And Inspector Wong admits that. He states if there's credible evidence that Hall is not there, that would negate probable cause. And the only witness that can do that is Lawrence. Because Lawrence is an individual whose complete presence negates probable cause for the other two. If there is three suspects, all of the same height, Lawrence's presence vitiates that probable cause. Lawrence is 6'3", Gillis is 5'6". That's almost a foot difference. But the victims state they were the same height. So his presence there would indicate that these are not the right people. Then if he's with Hall and Gillis at the gambling, as they indicated they were, the Casino Daily City, then it strongly suggests a factor that would negate probable cause. And he has an obligation to interview him. And he knew that this person was going to provide at least testimony that would be of an exculpatory nature. And that's why he didn't want to interview him. He states that he wanted to interview him because it would have been important. But as soon as he concluded his interview with Hall at 152, a two minute interview, he then walked right by Lawrence. And we know this because Lawrence states it. But we don't have to simply rely on Lawrence's statement because we know by Inspector Wong that the interview concluded at 152 and we know that Lawrence was released at 120. And therefore when Inspector Wong exited the interview room at 120, he interviewed... I'm a little confused. You mentioned 152 and now we have 120. It was at 152 that the interview concluded with Hall. It was at 220 that Lawrence was released. I thought that the police released Lawrence before Inspector Wong had a chance to interview him. Is that not correct? That's what Inspector Wong's position is. Is that true or not true? It is, let's say, a complete absolute fantasy on his part because it demonstrates his intent, his bad faith to not interview him. And this is why we know this. The release slip for Lawrence states that he was released at 220. In addition to that, Lawrence states he saw Wong after Wong exited the interview room with Mr. Hall. We have two corroborated pieces of evidence that indicate that Inspector Wong could have interviewed him. One is the release from custody that Mr. Lawrence received. Inspector Wong's explanation of that is that the release information on the document is in error. That's his explanation, that the police made a mistake and he had already left. In addition to that, we have Lawrence who sees Wong walk right by him. That's important because Lawrence is not far from the interview room. And at the conclusion of the interview with Mr. Hall, the inspector opens the door and Lawrence hears him say that the interview is over and he hears the thump of the tape and he hears him call him. You're down to about a minute and a half. Do you want to reserve or you can use it? Yes. We'll hear from the city and county. I'm Margaret Baumgartner. I'm a deputy city attorney who's representing the defendants in this particular matter. Two people, young people, got mugged at gunpoint late at night on a Friday night. The report out over dispatch was three black males wearing black clothing running in a particular direction towards a particular location, basically. The police responded. The Balboa station, the BART station. Towards the BART station, right. The police responded and they know the area. So one of the places that they looked was this dark alley, this dark one-way alley. And they actually saw three people who met the description that they had. And so they stalked those people and began to question them. There was nothing about that initial questioning that showed that these people were obviously somewhere else or were obviously not involved. They denied it, but the story with which they Did you shift to the police station interviews? Let's assume, for sake of argument, that there was probable cause in the field. But the police station interviews, didn't Inspector Wong conveniently ignore quite a few facts and not follow up on them? The lucky chance casino alibi that Holland Gillis volunteered independently. Gillis saying he had trouble walking and a speech impediment. The calls about the credit cards being used while the three were being detained. So this was at 2 o'clock in the morning. And the officers have to make decisions about what information they have and what information they can reasonably gather within a period of time before they have to process these people. And they did what they could by reaffirming the Also, in the record, there is information about the passing off of stolen property to accomplices, which the officers stated occurs regularly. And that they know that that occurs. So it did not surprise them necessarily that somebody else was using the credit cards at the time. And they, you know, the lucky casino explanation, it's not, you can't just go down and talk to somebody that easily at 2 o'clock in the morning when you're making a decision about whether you have probable cause. That is something for follow up investigation. Based on the information that these officers had at the time, they had probable cause. Let's talk about Mr. Lawrence, because I'm really curious. What's your best case that there was sufficient probable cause for him at either stage? So as Judge said, the fact that the victims could not positively identify Mr. Lawrence didn't mean that there was some information to suggest that he had been involved in this particular situation because he was in fact was with the two suspects who were positively identified. The information even prior to encountering Mr. Lawrence was that there were three suspects. It's not as though he was simply added on. And there is a conspiracy concern here, which is that they were acting in concert. What Judge Seaberg properly found based on the evidence that was before him was that the officers could reasonably believe that Mr. Lawrence was involved at least at a minimum through a sort of conspiracy theory of criminal activity in this particular case. I guess that's the qualified immunity issue. But do you think, I mean, there's probable cause supporting Mr. Lawrence. It seems like the alleged victim here, Kristen, could not identify the fourth man in the alley as well who fled when the officers approached, but yet he wasn't arrested. And so I'm just trying to figure out, you know, why was Mr. Lawrence arrested and the fourth man was either not arrested or released much more quickly? I have to say, I'm not recalling exactly what Kristen and Alex said about the fourth man. But they did not exclude Mr. Lawrence. Their testimony about who they recognized did not specifically exclude Mr. Lawrence. It simply was they could not So, despite the fact that there is some height differential, that is not an identification that is necessarily obvious to people who are being mugged and then who see the people who mug them run away or run towards them. Height is not as telling of a factor in that regard. It does have some to do with wearing large, baggy clothing, which was the case here. And so the height differential did not negate the identification in and of itself. Given all of the other factors and the totality of the circumstances, which is the standard here. Let's say the totality of the circumstance where there were four people involved in this mugging, but the victims couldn't identify two. Would they just arrest them all just because there were four? We don't know, because that's not the situation that they sat in. Well, this is close to the situation, because we had three. They couldn't identify three. They could only identify two. It seems that the identification by the victims was enough for the probable cause determination. And I'm just curious about Mr. Lawrence. So Mr. Lawrence was in the car with Mr. Gillis and Mr. Hall. He had a closer proximity to them, a closer connection to them than the person outside the car. And also, to the extent that it matters, I believe Mr. Gillis and Mr. Hall said there was no one standing outside the car who ran away. So based on their version of the facts, and again, we're here on summary judgment, based on their version of the facts, the fourth man didn't even exist. We believe he did, of course, because we went and caught him and found somebody who sort of matched that description. But there was less connection with the fourth man to Mr. Lawrence, who was in the car with the other two. And did the victims, I can't remember, say that after they were mugged, the three went into a car and drove away? No, no. They said that the three ran away on foot. There was no indication from the victims that they were in a car. But when they were located, they were, in fact, in a car. And again, you can't rob somebody in a car. You have to be on foot. And the time difference from the time of the mugging until the time they were caught? Six minutes. Six minutes, okay. They were identified six minutes afterwards within a two-block area, which is traversable in six minutes. It's not as though they were found across town or much farther away than would be expected or anything of that sort. What about the fact that I think it was Alex identified Hall as the robber with the gun, while Kristen identified Hall as a robber who definitely did not have the gun? Does that affect the probable cause finding? I'm not sure that that is so absolute. Again, I'm trying to remember the exact phrases that they used. Because it doesn't look like Inspector Wong noted that discrepancy. I know that Kristen identified both of them, and I'm not recalling exactly what she said with respect to who had the gun. But let's just say what I just told you is correct. How does that affect the probable cause finding? In this case, there's still an identification of both people at the scene. There is obviously an eyewitness discrepancy. Their officers can rely on information, even if there is some contradiction of that information, given all the other information that is available to them. This, I have to agree, is not an exact science. Eyewitness identification, as we know, is something that is brought into question fairly regularly. But keep in mind, these officers had limited information, and they were making the decision that they were making based on the information that they did have. What's your best authority for these identifications? What's the case that best tracks these facts? There's actually a case that is not cited in the briefs, but was decided in, I believe, February of 2010, shortly after this particular incident, but before this case came up, and it's called Sanchez v. Hedgepath. It's from the Central District of California, and that case was actually decided on an ineffective assistance of counsel basis. Counsel, do we have a 28-J on that? I only found this case when I was looking at other identification cases. I don't actually know why it wasn't cited. I did not draft the briefs, unfortunately. But when I was looking just yesterday, because I was curious about what other cases did say about eyewitness identification and this concern about field identification. And what the cases say about that is that under the Fourth Amendment, the exigency of these particular circumstances in doing field identifications is a factor that the court can consider in finding validity there. Counsel, before you leave today, be sure and give our deputy clerk three copies of that citation so that we will have a chance to look at it later. I will, Your Honor. And in that case, again, it was an ineffective assistance of counsel case, but the court was reviewing what the counsel could have done to try and defend the suspects in that particular matter. And what they said was they went through an analysis of the entire identification procedure, which was quite similar to here. It was a field identification where the suspects were in custody, they were in handcuffs. It was a one-person identification. And the court said there was no ineffective assistance of counsel because there was no way they could have challenged that field identification. Counsel, is it relevant that Lawrence was released at the station? What's relevant there is that it shows that the officers were not overreaching. The officers were doing the best they could, again, and there is a qualified immunity issue here, doing the best they could given the information that they did have. They had the two, as certain as could be, identifications of the two, and because there was not the identification of Mr. Lawrence, they did let him go. There's one thing that does bother me about this case, and that is that I understand that the charges with respect to the remaining two were dropped. There is a lot of case law out there that says the DA's decision about whether to charge or not is completely irrelevant to the Fourth Amendment standard. It's not even admissible in most cases. District attorneys make decisions. So now that I know it, am I allowed to not know it? You're not allowed to consider it. There's lots of case law about why that is, simply because the district attorney has so many factors that go into a charging decision far above and beyond what the officers at 2 o'clock in the morning are doing with the people in front of them. Just turning back to what they were doing at 2 o'clock in the morning at the police station, this may be a small point, but is it correct that in, I believe, having Kristen revisit the question of identification, did Wong refer to the gentleman as these bad guys in showing her photographs? I don't recall that in the record. I think I would have remembered that, and I don't. So I didn't review the record for that particular point. There is one legal issue that I would like to raise that we haven't discussed, and that involves the Civil Code section 52.1 claim. And the reason that I'm raising it is because there is recent California case law on this issue, and it is creating problems and divisions amongst the district courts. This is the Bain Act claim about threats, intimidation, and coercion and interference with constitutional rights. The district courts are all over the place with respect to this particular claim, and it really matters. And the reason it matters is because the cases are basically saying that even if we have qualified immunity, and even if you don't sue the individual defendants, if you falsely arrest somebody, you've got liability under 52.1. And that is not what 52.1 was designed to do. And the California Court of Appeals cases suggest that that is not what it's designed to do. But both the Central District and the Northern District have a lot of cases following the California Court of Appeals case in Shiyue that suggest that that is the case. And the reason that I'm raising it with this particular panel is because the 52.1 claim is most commonly come up in district court, even though it is a state court claim. And the reason for that is that it's basically an add-on to civil rights claims. So 52.1 was designed as a hate crime statute and was not designed to address law enforcement activities specifically. And the two cases, and this was raised in the 28J letter, the two cases that have been decided by the California Court of Appeals, Shiyue and Bender, both specifically state that you need threats, intimidation, and coercion that is not inherent in the underlying constitutional violation. But the district court cases, there are four cases by one judge in the Eastern District and a number of cases, including three by Judge Henderson in the Northern District, that apply it to any false arrest claim that exists, that is brought before the court. And that, I believe, is wrongly decided, and I think that the Ninth Circuit is going to have to deal with the conflicts. There are some other cases, for example, Judge James in one case dismissed the 52.1 claim, even when there was both excessive force and false arrest. But this court has the opportunity to address the 52.1 claim in a pure false arrest situation. Given that plaintiff's counsel didn't raise on appeal the issue of excessive force, you have before you the concern about whether 52.1 would apply in an exclusively false arrest scenario. And I believe that the reading of both Shiyue and Bender is that it does not, because any of the threats, intimidation, and coercion is inherent in any false arrest. Thank you, counsel. Your time has expired. Mr. Haynes, you have some reserve time. I just want to note that Inspector Wong tells Alex that Alex cannot identify Gillis face-wise. In his report at 94, Inspector Wong states that Alex, recognized the photo, later identified as Gillis, as the guy with the facial hair. And this is a fabrication of what the evidence is in order to establish a identification. I also note that it wasn't six minutes between the time of the actual robbery and the apprehension. The robbery occurred much earlier than that. It was shortly after they put the broadcast out that the plaintiff was stopped. Counsel, I have one question about your unequal treatment claim, which we haven't discussed yet. Do you agree that the McDonnell-Douglas burden-shifting framework applies? And if so, how do Hull and Gillis meet the burden of showing pretext that the police explanations are pretextual? Well, they're pretextual because they're false. For example, he states that he identified Gillis by his facial hair, where in fact he states in the interview he couldn't identify his face at all. So it's clearly pretextual. And moreover, the motivating factor in the debate. I'm talking about the law enforcement's actions with respect to Hull and Gillis. I understand the Gillis declaration was in the record, perhaps not cited to in pinpoint fashion by the district court, but are you arguing that the law enforcement's explanations of their actions shows pretext? I would say their actions clearly shows pretext. And both the fact that he used a racial slur and the fact that the underlining actions aren't supported by the record. The identifications are slanted in order to establish probable cause. Thank you, counsel. Your time has expired.
judges: Mueller, O'scannlain, Murguia